May it please the Court, my name is Brandon Stoker, Counsel for Appellant Robert Chestra. The Court below in this case dismissed Mr. Chestra's complaint on statute of limitations grounds only by ignoring the plain allegations in that pleading and by construing all inferences therefrom in a light least favorable to Mr. Chestra. That turns this Court's standard for evaluating pro se complaints on its head. Worse still, the Court dismissed the case with prejudice without giving Mr. Chestra leave to cure any alleged deficiency in his two-page handwritten complaint. If this Court can merely conceive of facts which, if amended into the pleading, would plead a plausible and timely claim, this Court should reverse and remand with leave to do just that. I want to begin by clearly defining Mr. Chestra's injury in this case. That has been the source of some confusion both among defendants and by the District Court. This Court in Augustine explained that the Kubrick standard for determining when a claim has accrued is slightly different in cases where a physician's failure to diagnose or treat has caused the injury. In a traditional case, a physician inflicts a clearly identifiable injury by some affirmative action. But in a case like this, the injury occurs, quote, with the development of a preexisting problem into a more serious condition which poses a greater danger to the patient. That quote is from Augustine? That is from Augustine, yes. Thank you. Applying that standard here, the injury Mr. Chestra alleges in his complaint was permanent paralysis. His hand and arm are now hanging motionless in a sling. He is permanently and irrevocably paralyzed. It is not temporary paralysis resulting from the AVM condition that he experienced or from the surgery that he underwent to repair the AVM, which is what defendants alleged in their briefing. In fact, Mr. Chestra alleges that he was experiencing a loss of motor function even prior to surgery in 2007. Temporary paralysis following brain surgery is a normal and expected consequence. Indeed, his neurosurgeons at the University of San Francisco apparently anticipated that he would experience temporary paralysis because they recommended post-surgical therapy to address that condition in his treatment plan. And finally, Mr. Chestra alleges that in 1991 he previously experienced AVM, following surgery had temporary paralysis, and with appropriate therapy regained the use of his retina. Was that also brain surgery? That was also brain surgery. And what year was that surgery in? According to the report appended to his complaint, that was in 1991. So this was the second time he had experienced this condition and undergone surgery. So to be clear, the district court here based its ruling entirely on a single sentence in his handwritten complaint stating that Dr. William, the doctor that he was referred to in January 2009, determined that he was experiencing the onset of hemiparesis, which is another word for temporary paralysis. But, in fact, that wasn't new information to Mr. Chestra. All he was doing was observing that he was experiencing temporary paralysis and he prescribed stretching exercises to address that condition. That was Dr. Williams? That was Dr. William. Or William? William Singleton. Yes, the orthopedist. Yes. Now, in the report appended to his complaint, Mr. Spriggs, the therapist that he saw after transferring out of defendant's care, determined that the window for correcting the temporary paralysis had closed, quote, several months prior to the October 2013 report. That means, according to Mr. Spriggs, which must be taken as true on a motion to dismiss, he had a five-and-a-half-year window between January 2008 when he underwent brain surgery and mid-2013 when the window for progression had closed because he didn't receive adequate therapy. Now, with that backdrop, we believe that Mr. Chestra alleges a timely complaint in the complaint as written or, sorry, excuse me, a timely claim in the complaint for three reasons. First, he alleges that his injury did not actually occur until mid-2013, and that is the window for progression from temporary to permanent paralysis closed. According to Kubrick, a claim does not accrue until there's actually an injury. Mr. Chestra could not have filed his claim any earlier than 2013 because he was still only experiencing temporary paralysis, which, if he had been referred to a competent doctor or therapist, could have reversed. Second, Chestra's claim was timely under the delayed discovery doctrine. Even if there is a dispute about precisely when his injury progressed from temporary to permanent, he didn't discover the nature of his injury and the fact that it was permanent until October and November of 2013 when he met with Mr. Sprigg. Under the delayed discovery doctrine, he must know both of the existence and cause of his injury, and because he didn't learn that until 2013, the claim didn't accrue until that point, and when he filed in 2014, he had filed an action well within the four-year statute of limitations. And third, Chestra's claim was timely under the continuing violation doctrine because defendants were persistently indifferent to Chestra's ongoing medical needs, and that's true in at least two respects. First, they engaged in a pattern of conduct in which they continually ignored or disregarded Chestra's pleas for appropriate AVM treatment and post-surgical therapy. And second, regardless of what Chestra requested, defendants were aware of the fact that he was experiencing deteriorating condition in his right hand and arm and failed to do anything about it. The first part of what you just said, though, about the delay in surgery, he certainly knew that the delay in surgery had happened. Yes. Right? And I wasn't quite sure why you're bringing up that. You're not suing the surgeons, are you? He's not suing the surgeons. He's suing the doctors.   And I'm just wondering, do you think he was at all willing to have a doctor come in to help him adjust and regain his use of his arm? That's correct. His claim is primarily against the primary care providers that he had at the prison hospital where he was staying and against the director of medical services at that hospital. Okay. If you were given leave to amend, what would he add to the complaint? He would add several things. To the extent necessary, he would clarify that his injury was only temporary and it was a preexisting condition, not necessarily caused by defendant's conduct, but resulting possibly from AVM or brain surgery to correct AVM, and that it didn't progress into a permanent injury until 2013. I think if construed fairly and in the light most favorable to Mr. Chestra, that already is alleged in the complaint. But to the extent that it's ambiguous, he would clarify that. And number two, I think he would add more factual detail explaining the precise timeline. I mean, admittedly, this complaint is not one that we would include as a model in the Ninth Circuit handbook for a deliberate indifference complaint. Good handwriting, though. He could read it. Remarkably good handwriting, because he was relearning to write with his left hand because his right hand was paralyzed. I see that I have two minutes left and would like to reserve some time. Sure. That's fine. Thank you very much. We'll hear from the State. Good morning, and may it please the Court. Mike Osgood for the defendants. The district court correctly held that the statute of limitations barred the specific claims plaintiffs made against defendants. Those claims were that defendants denied or delayed plaintiff's treatment, which caused his arm to become paralyzed. As plaintiff wrote, the delays included that he was, quote, was denied being sent to the right doctor for post-surgical care for a year. I want to quickly correct some factual assertions that were made in the opening argument that are not correct. The report attached to the complaint does not say that Mr. Chestra had an AVM or got surgery in 1991. It just says he had a hemiparesis and he claims he recovered from it. Another thing, pardon me. So a claim accrues for a patient when they know about a bad medical outcome and who has allegedly caused it. As plaintiff conceded below, he sued defendants over, quote, their treatment of him in 2007 through 2009. So back in 2009, plaintiff knew defendants managed his care, had delayed treatment, and his hand had become paralyzed. Like in the Ninth Circuit's Lukovsky decision, plaintiff, quote, knew he had been injured and by whom. Plaintiff, and this is very important, plaintiff never --- A couple of things. And what I took from this is that with this type of surgery that he had, it seems that there is one of the residual effects is some temporary paralysis that can be addressed. A couple of things on that, Your Honor. One is his actual subjective understanding is not the test. I understand. It's an objective test. So on that point, a year after he gets his surgery and he goes and sees Dr. William and all Dr. William can do, according to plaintiff, is give him some stretching exercises for comfort. He should have suspected it was permanent at that point. You say all he could do. That was all the doctor said he was going to do for him. I'm stuck with Mr. Chester's words. And what he said was all he could do, the doctor, was. But, I mean, that's part of the question when we have a pro se complaint is, I say you're stuck with it, so you're correct to say it that way. But we do try to interpret it liberally. I understood, Your Honor. By getting back to the question about the permanence of the injury, a temporary bout of paralysis is an actionable injury and causes a claim to accrue. And I put this thought experiment in my brief. If Dr. William had given Mr. Chester the correct exercises and had cured the paralysis, Mr. Chester would have a viable lawsuit saying, hey, you guys delayed getting me to Dr. William. He fixed my problem. I've been paralyzed in the meantime. That's an actionable injury. And the Supreme Court is clear that it's not appreciation of the full extent of the injury that causes it to accrue. If you have an actionable injury, at that point you're able to sue. And let me give a classic example. So if a person finds out they have cancer and it was caused by someone or wasn't treated properly, they don't have to wait to die before their claim accrues. They're just the knowledge that that will happen, the claim accrues, and they can file suit at that point. Although, say, putting aside the way he couched it, in your hypothetical, if the care, then he wouldn't have had an actionable injury for the year, let's call it, of paralysis. And in his complaint, he does talk about pre-op and post-op. So if he didn't have a viable pre-op claim but he did have a viable post-op claim, you have to distinguish what he knew from when it happened, right? Yes, Your Honor. But what I would say is he knew that he wasn't getting the post-op care. So he – and he knows defendants' role in providing, in getting him to that care. When you say he knew he wasn't getting it because there was a delay in getting to Dr. William? Correct, Your Honor. So in fact, he alleges the reason why these defendants were deliberately indifferent, why they knew as his managers there was a problem, is he was telling them that he needed to get the care. And this kind of leads to the paradox in a plaintiff's case. Deliberate indifference requires the defense to know of a problem and then ignore it. I haven't been able to find a lot of delayed discovery in deliberate indifference cases because of this paradox. Either normally it's the plaintiff and the doctors know there's a problem and then the doctors are ignoring it, but then that gets rid of delayed discovery because people know there's a problem. Or, and I think this is this case, no one knew there was a problem with Dr. William's treatment. Plaintiff alleges that he is telling the doctors that he needed to be seen by the right doctor, and then he says in his complaint, in his opposition, that he was seen by Dr. William and that – who at least had experience with AVM. So at that point, there's no allegations that the defense knew there was any problem with Dr. William's treatment. So what I – has been missing from plaintiff's presentation in their briefs and even here today is, what is it that plaintiff later learned about what defendants actually did that he didn't know about back in 2009? There's a difference between the did and the injury. I mean, I agree that all of the things that happened other than the fact that nothing happened later on happened earlier, but if the mindset was it was temporary before, it seems to be temporary now, and then they tell me I'm never going to get any better. I mean, if Dr. William – that was why I was sort of gigging you on the all he could do. If the doctor says this is all I can do, you're never going to get any better, I would agree that he accrued right then. But – if Dr. William said there's stuff I could do or Mr. Chester had any idea there was something that could be done, his claim also accrues and he can't claim delayed discovery because he knows right then there's still a problem. And at that point, he can file suit, he can get an injunctive relief, he can get sent to the right treatment providers. I do these cases. We see that a lot. Plaintiffs will file saying I need to be seen by this specialist. Get me to this specialist. And by their claim accrues, they can get injunctive relief and they get seen by the right specialist. But no one here, there's no allegation here that anyone knew there was a problem with Dr. William's treatment. And that's what the district court said below about that is Mr. – and I put it in my opening brief and in my reply. There's been no connection made between what defendants allegedly did and the problems with Dr. William's care. And it seems to me that this is what this lawsuit is about is what Dr. William did. He provided the wrong care. That may be a complaint against Dr. William, but it's not a deliberate indifference claim against these defendants who what they supposedly did was just delayed getting plaintiff to Dr. William. And turning back to the injury, not only is it an objective standard, so that means that would a reasonable person suspect that they were permanently injured. So a year after surgery, Mr. Chester has seen no improvement. Another year after that, he's still outside the limitations period. At that point, that's two years after his surgery, he apparently has not seen any improvement. A reasonable person would suspect at that point that the paralysis was permanent. What plaintiffs would have us, the Court believe, was that five years after the surgery, he was still paralyzed and he somehow still believed that this was a temporary condition. And it wasn't until a physical therapist told him, no, something could have been done, that he learned it was permanent. What Mr. Chester, the reasonable reading of that report is what Mr. Chester learned was that, in fact, what he thought was permanent wasn't permanent. It could have been fixed. So he actually learned his permanent injury was not permanent. Or it could have been, maybe it was now permanent, but he should have been believing it was permanent. He didn't think anything could be done, which is why he hadn't done anything trying to get more treatment after Dr. William, at least according to the complaint. I want to briefly use my – the rest of my time to talk about the continuing violation doctrine. That's been sharply limited by both the Supreme Court and this Court. And importantly, plaintiff hasn't alleged any conduct that occurs within the limitations period. Isn't it suggested he should be given leave to amend?  And so I would argue that it's futile, because fundamentally this is a lawsuit about what Dr. William did. And we haven't heard anything about what these defendants did that actually would be an actionable deliberate indifference claim. So I think the claim would be futile, and that would be my argument on leave to amend. Okay. Thank you. Thank you. I'd like to briefly touch on the nature of Mr. Chester's allegations here. To be clear, he alleges the failure to act both before and after surgery. That began with delaying the surgery itself. Following surgery, he didn't see anybody who could treat the temporary paralysis he later, when he saw Dr. William. And then he alleges that for a period of 4.5 years, between January 2009 until he was transferred out of defendant's care sometime in mid-2013, no further referrals were made to anybody, not to Dr. William, not to a therapist, not to anyone at the California Medical Facility. Is there a reason that Dr. William is not a defendant here? Your adversary couches it as the question is whether there was a problem with Dr. William's care. We actually asked the client this question. My understanding is he didn't believe Dr. William did anything wrong, because Dr. William is not trained in the treatment of AVM. He's not a neurosurgeon. He's not a physical therapist. He's an orthopedist. We don't even know what kind of orthopedist. He might treat ankle and foot injuries. And what he alleges in his complaint was that all that he could do, meaning all Dr. William could do, was prescribe a stretching exercise, which he described elsewhere in the complaint as an inadequate doing. All he could do is all that was within his competency. Is that the way you'd interpret it? That's correct, which is why he didn't bring suit against Dr. William, because he felt like Dr. William wasn't the person he should be referred to. He should be referred to somebody skilled in treating AVM injuries. But the critical allegation here is that he alleges failure to act after 2009, continuing until 2013. It defies common sense to suggest that these defendants absolved themselves of any responsibility, because in the period of five and a half years, they referred him to a specialist once to treat temporary paralysis. I also want to clarify that in 2009, he was not fully paralyzed. He was experiencing partial paralysis, a declining ability to use his right hand and arm, as described as loss of motor function. But he was not fully paralyzed. In fact, Dr. William prescribed stretching exercises, which would be totally counterintuitive if he were, in fact, fully paralyzed. At that point, it was only partial and didn't become permanent until 2013, which is when his injury accrued, which is why his claim is timely. In any event, we do ask for leave to amend, because any deficiency in the complaint could be easily repaired. Thank you. Thank you very much. And we thank both counsel, and we especially thank the willingness to step in and help out. So with those arguments, we will submit the matter at this time.
judges: Boggs, Paez, Owens